724 F.Supp. 1123 (1989)
UNITED STATES of America
v.
MARCUS SCHLOSS & CO., INC., Defendant.
No. 88 Cr. 796 (CSH).
United States District Court, S.D. New York.
October 31, 1989.
Louis J. Freeh, Acting U.S. Atty., S.D. N.Y., New York City (Carl H. Loewenson, Jr., Elizabeth Glazer and Howard E. Heiss, Asst. U.S. Attys., of counsel), for U.S.
Sullivan & Cromwell, New York City (Marvin Schwartz, Gandolfo V. DiBlasi, *1124 Elise A. Bloustein, John D. Lovi and James E. Hough, of counsel), for defendant.

MEMORANDUM OPINION AND ORDER
HAIGHT, District Judge:
A grand jury indicted defendant Marcus Schloss & Co., Inc. ("MS & Co.") on one count of conspiracy and seven substantive counts of insider trading. After a five-week jury trial, MS & Co. was convicted on two of the eight counts. Specifically, MS & Co. was convicted of the conspiracy charged in Count One, and one count of securities fraud relating to trading in American Brands, Inc. ("American Brands"), which was contained in Count Five of the indictment. MS & Co. was acquitted on the remaining six substantive counts.
MS & Co. now renews that part of its pre-trial motion seeking dismissal of Count Five on the grounds that punishment of MS & Co. on that count would violate the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution.[1] MS & Co. relies on a recently decided Supreme Court case, United States v. Halper, ___ U.S. ___, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), in support of its argument that the company's settlement with the Securities and Exchange Commission ("SEC") of a civil action arising out of the same trades that form the basis for the criminal prosecution bars the subsequent criminal proceeding.

Background
On February 3, 1989, the SEC filed a civil complaint against MS & Co. The relevant portions of the complaint alleged that on March 10, 1986 trading by MS & Co. in the common stock of American Brands violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5. The complaint alleged that MS & Co. realized profits in the amount of $9,825 arising out of its illegal trades in the stock of American Brands. As a result of all the trades listed in the complaint, of which American Brands was one, the SEC sought total disgorgement of alleged illegal profits amounting to $136,000, as well as a double civil penalty of $273,800 under the Insider Trading Sanctions Act of 1984 ("ITSA"), 15 U.S.C. § 78u(d)(2)(A).
On the same date that the civil complaint was filed, MS & Co. consented to the entry of a final judgment against it. While admitting no wrongdoing, the firm paid both the $136,000 in profits[2] and the double penalty of $273,800 pursuant to the consent judgment. Of those payments, only $9,825 of the profits and $19,650 of the penalty related to trading in American Brands. Settlement of the civil action also included the entry of an order of permanent injunction restraining MS & Co. from engaging in future insider trading.[3]
The permanent injunction was accompanied by a Consent and Undertaking executed by MS & Co. which provides in § V:
Defendant Marcus Schloss acknowledges that it has been informed that plaintiff Commission, at its sole or exclusive discretion, may refer this matter, or any information or evidence gathered in connection therewith or derived therefrom, to any person or entity having appropriate *1125 civil, administrative or criminal jurisdiction.
That provision is consistent with an SEC regulation, 7 C.F.R. § 202.5(f), providing that:
any person involved in an enforcement matter before the Commission who consents, or agrees to consent, to any judgment or order does so solely for the purpose of resolving the claims against him in that investigative, civil, or administrative matter and not for the purpose of resolving any criminal charges that have been, or might be, brought against him. This policy reflects the fact that neither the Commission nor its staff has the authority or responsibility for instituting, conducting, settling, or otherwise disposing of criminal proceedings. That authority and responsibility are vested in the Attorney General and representatives of the Department of Justice.
Lastly, it is common ground that at the time MS & Co. consented to the SEC order, it knew a grand jury investigation into certain of its related trading activities had been in progress for almost two years.
That investigation resulted in the indictment at bar. As to the jury's guilty verdict on Count Five, MS & Co. now sets up the civil consent order, thus negotiated, as the basis for a claim of double jeopardy protection.

Discussion
The Supreme Court in Halper considered the issue of "under what circumstances a civil penalty may constitute `punishment' for the purposes of double jeopardy analysis." 109 S.Ct. at 1895 (footnote omitted).
In Halper, the defendant had been criminally prosecuted and convicted on 65 counts of submitting false claims to the government in violation of the False Claims Act, 18 U.S.C. § 287 ("FCA").[4] Halper was sentenced to two years imprisonment and a $5,000 fine. Subsequent to the criminal prosecution, the government brought a civil action in district court under the FCA seeking the authorized $2,000 penalty on each of the 65 false claims filed by Halper. In other words, the government sought to recover a total of $130,000. The total loss to the government in terms of wrongly paid claims was $585.
The government moved for summary judgment based on the collateral estoppel effect of Halper's criminal conviction. The district court granted the government's motion, but denied its request for $130,000, on the grounds that requiring payment of that sum would give rise to criminal punishment in violation of the double jeopardy clause. The district court found the $2,000 fine to be discretionary and awarded the government $16,000 in order to "reasonably compensate [it] for actual damages as well as expenses incurred in investigating and prosecuting [the] action." 660 F.Supp. 531, 534 (S.D.N.Y.1987).
The government then moved to amend the judgment pursuant to Fed.R.Civ.P. 59(e) on the grounds that the district court erred in its finding that the $2,000 penalty was discretionary. The district court granted the government's motion, but refused to modify its award of $16,000. Rather, the district court reaffirmed its holding that a greater award would be violative of the double jeopardy clause.
The government took a direct appeal to the Supreme Court which affirmed the ruling of the district court on the double jeopardy point, but remanded the case in order to allow the government the opportunity to challenge the district court's assessment of its injuries. In affirming the district court's ruling on double jeopardy, the Supreme Court set forth a "rule for the rare case ... where a fixed penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused." Halper, 109 S.Ct. at 1902.
On the strength of the Court's opinion, MS & Co. argues that the double penalty *1126 paid by it in the context of the civil settlement[5] precludes the government's later criminal prosecution of the company on that charge relating to trading in American Brands.[6] Specifically, MS & Co. contends that the penalty paid by it in consequence of its trading in American Brands amounts to punishment as the Court interpreted that term in Halper.
[T]he determination whether a given civil sanction constitutes punishment in the relevant sense requires a particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve. Simply put, a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment. These goals are familiar. We have recognized in other contexts that punishment serves the twin aims of retribution and deterrence. See, e.g., Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168, 83 S.Ct. 554, 567, 9 L.Ed.2d 644 (1963) (these are the "traditional aims of punishment"). Furthermore, "[r]etribution and deterrence are not legitimate nonpunitive governmental objectives." Bell v. Wolfish, 441 U.S. 520, 539, n. 20, 99 S.Ct. 1861, 1874, n. 20[, 60 L.Ed.2d 447] (1979). From these premises, it follows that a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can be explained only as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term. Cf. Mendoza-Martinez, 372 U.S., at 169, 83 S.Ct., at 568 ...
* * * * * *
We therefore hold that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution.
109 S.Ct. at 1901-02.
The first inquiry in the case at bar concerns the question of timing. The Government contends that Halper is inapposite because in that case the criminal conviction preceded the civil sanctions, whereas at bar the order is reversed.
That circumstance takes the case out of the precise holding in Halper that "under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction" if the civil sanction is punitive. 109 S.Ct. at 1902. But I do not regard timing as crucial. If in fact a civil sanction may fairly be characterized "only as a deterrent or retribution", id., then its exaction before imposition of criminal punishment should have the same double jeopardy effect as exaction afterwards. Cf. Jeffers v. United States, 432 U.S. 137, 151, 97 S.Ct. 2207, 2216, 53 L.Ed.2d 168 (1977) ("trial on a greater offense after conviction on a lesser ordinarily is just as objectionable under the Double Jeopardy Clause as the reverse order of proceeding") (footnote omitted).
I also regard as immaterial for double jeopardy analysis the fact that MS & Co. admitted no wrongdoing in the civil consent judgment. Neither does the defendant in a criminal case who pleads nolo contendere; nor need the district court, in accepting such a plea, satisfy itself that there is a factual basis for it, as it must on a plea of guilty. Compare Rule 11(a)(1), Federal Rules of Criminal Procedure, with Rule 11(f). But a nolo contendere plea furnishes a sufficient basis for a claim of double jeopardy. United States ex rel. Marcus v. Hess, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943).
Given all this, I nonetheless conclude that the procedural genesis of the SEC consent order in the case at bar precludes *1127 MS & Co. from urging that proceeding as the basis for a double jeopardy claim. At the time it entered into the consent order, MS & Co. was fully aware of the ongoing grand jury investigation. Notwithstanding that awareness, it explicitly recognized the SEC's discretionary power to refer the matter "or any information or evidence gathered in connection therewith or derived therefrom" to the prosecuting arm of government. Moreover, experienced counsel for MS & Co. were surely aware of the SEC regulation limiting the effect of such consent orders in the usual circumstances.
MS & Co. was not required to abide by the usual circumstances at the time of entering into the consent order. Its counsel could have sought to condition the consent order and attendant sanctions upon the SEC agreeing to recommend that MS & Co. not be indicted: an agreement which, if not kept, could bar the indictment. United States v. Rodman, 519 F.2d 1058 (1st Cir. 1975). Cf. United States v. Fields, 592 F.2d 638 (2d Cir.1978), cert. denied, 442 U.S. 917, 99 S.Ct. 2838, 61 L.Ed.2d 284 (1979) (improper conduct of SEC attorneys during negotiations of consent judgment in misleading defense counsel to believe no criminal reference would be made does not bar indictment where deception caused defendants no harm). To be sure, the SEC might not have agreed to such a condition; but MS & Co. would then have had the option of refusing to settle the civil action, and awaiting the falling of the second, criminal shoe. Under the common practice in this circuit, MS & Co. could have obtained a stay of the civil action (including discovery) pending the criminal trial. Had MS & Co. pursued that course, Halper in its procedural aspects would have fit this case like a glove.
While MS & Co. no doubt had sound tactical reasons for proceeding in this fashion, I conclude its election forecloses this particular disposition of the civil case as the basis for a claim of double jeopardy. Cf. Jeffers v. United States, supra, 432 U.S. at 152, 97 S.Ct. at 2217 ("... although a defendant is normally entitled to have charges on a greater and a lesser offense resolved in one proceeding, there is no violation of the Double Jeopardy Clause when he elects to have the two offenses tried separately and persuades the trial court to honor his election") (footnote omitted). It is well settled that a defendant's conduct is material in double jeopardy analysis. See, e.g., United States v. GAF Corp., 884 F.2d 670 (2d Cir.1989) (generally the principles of double jeopardy do not bar a second prosecution following a mistrial declared at the request of a defendant).
I hold that the defendant in an SEC civil proceeding who, with knowledge of a pending criminal inquiry, enters into a consent order explicitly recognizing the absence of any bar to criminal proceedings arising out of the same conduct, cannot subsequently advance that civil disposition, even accompanied by monetary sanctions, as the basis for a claim of double jeopardy.
Alternatively, I conclude that the double jeopardy claim fails on its merits.
The penalty provision of ITSA provides as follows:
The amount of such penalty shall be determined by the court in light of the facts and circumstances, but shall not exceed three times the profit gained or loss avoided as a result of such unlawful purchase or sale, and shall be payable into the Treasury of the United States.
15 U.S.C. § 78u(d)(2)(A) (emphasis added). In support of its argument that the double penalty paid by MS & Co. under ITSA is punishment for double jeopardy purposes, defendant looks to the legislative history of the statute. It is indeed true that the House of Representatives' report on ITSA states that the "legislation provides increased sanctions against insider trading in order to increase deterrence of violations." H.R.Rep. No. 376, 98th Cong., 2d Sess., reprinted in 1984 U.S.Code Cong. & Admin.News 2274, 2275 ("House Report"). Various other portions of the House Report make clear that deterrence of insider trading was a significant goal of the Congress in enacting that portion of ITSA at issue here. See id. at 2279, 2280, 2281, 2285, 2286, 2291, 2293, 2297, 2298 and 2299.
However, the House Report also makes clear that Congress did not intend the penalty *1128 provision of ITSA to preclude the use of the other remedies available to the government in the context of insider trading, including criminal prosecution. Id. at 2283. Indeed, Congress manifestly intended proceedings under ITSA to be purely civil in nature as evidenced by the fact that a preponderance of the evidence standard, rather than a higher burden of proof is all that is required by the statute. Id. at 2288-89. Congress further declined to require a jury trial in civil proceedings under ITSA. Id. at 2289.
MS & Co. argues at length that the goal of deterrence evidenced in the legislative history is determinative of whether the penalty paid is punishment for double jeopardy purposes. I do not agree.[7] Even if the legislative history could be read to evidence an intent to create a criminal proceeding, the Court has said that a traditional statutory construction approach is not applicable to analysis under the double jeopardy clause.
[W]hile recourse to statutory language, structure, and intent is appropriate in identifying the inherent nature of a proceeding, or in determining the constitutional safeguards that must accompany those proceedings as a general matter, the approach is not well suited to the context of the "humane interests" safeguarded by the Double Jeopardy Clauses's proscription of multiple punishments. See Hess, 317 U.S., at 554, 63 S.Ct., at 389 (concurring opinion of Frankfurter, J.). This constitutional protection is intrinsically personal. Its violation can be identified only by assessing the character of the actual sanctions imposed on the individual by the machinery of the state.
Halper, 109 S.Ct. at 1901 (footnote omitted). The Court in Halper adopted an "as applied" approach for analysis under the double jeopardy clause.
[T]he determination whether a given civil sanction constitutes punishment in the relevant sense requires a particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve. Simply put, a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment.

Id. at 1901-02 (emphasis added). See also United States v. Pani, 717 F.Supp. 1013, 1019 (S.D.N.Y.1989) (district court engaged in "as applied" analysis of civil penalty provision of FCA).
The less than $20,000 penalty paid by MS & Co. for its trading in American Brands cannot fairly be said to serve "only as a deterrent or retribution." Halper, 109 S.Ct. at 1902. This is not that "rare case" where the fine paid is wholly divorced from the level of fraud and the government's expenses, including those of investigation and prosecution. Rather, this presents the "ordinary case [where] fixed-penalty-plus-double-damages provisions can be said to do no more than make the Government whole." Id. The fine does not in and of itself rise to the level of punishment contemplated by the Court in Halper. Moreover, the fine was only a small part of an otherwise clearly remedial settlement, which included such things as injunctive relief and other proscriptions on the future behavior of the defendant.

Conclusion
The motion of MS & Co. to set aside the jury's verdict on Count Five of the indictment on double jeopardy grounds is denied.
SO ORDERED.
NOTES
[1] MS & Co. moved prior to trial for an order pursuant to Fed.R.Crim.P. 12(b) dismissing as against it Counts Two, Four, Five, Seven and Eight of the indictment on double jeopardy grounds. Decision on that motion was reserved pending the outcome of the trial, which if it resulted in an acquittal on the above counts would render the motion moot. The instant application is thus directed only to Count Five of the indictment and not to the conspiracy charge contained in Count One.
[2] The disgorged profits were paid into an escrow account upon which individuals who claim to have been harmed by MS & Co.'s insider trading can draw compensation.
[3] The SEC also brought a related administrative proceeding pursuant to Section 15(b)(4) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o(b)(4). MS & Co. settled the administrative action with the SEC and as part of the consent order the company was censured, directed to retain a consultant to evaluate its activities and policies, directed to adopt the consultant's recommendations, and directed to compile and maintain a compliance manual.
[4] Halper's fraud was perpetrated in the context of the Medicare program.
[5] The relevant dollar amount totals $19,650, that being the penalty paid by MS & Co. in respect of its trading in American Brands.
[6] The government concedes that for double jeopardy purposes, the charge contained in Count Five of the indictment is the same offense as that contained in the civil complaint.
[7] I note that in so holding I am in agreement with the only other ruling on this issue. Judge Aspen of the Northern District of Illinois was presented with precisely the same arguments in the case of United States v. Elliott, Dkt. No. 88 Cr. 645 (N.D.Ill.), and on September 5, 1989, the Judge ruled from the bench that prior settlement of a civil action which included the payment of a fine under ITSA did not bar subsequent criminal prosecution on the same offense as that contained in the civil complaint. Affidavit of AUSA Carl H. Loewenson, Jr. sworn to on September 11, 1989 at ¶ 5.