253 N.J. Super. 51 (1992)
600 A.2d 1230
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CIBA-GEIGY CORPORATION, DEFENDANT-APPELLANT, AND TOMS RIVER CHEMICAL CORPORATION, WILLIAM P. BOBSEIN AND JAMES A. MCPHERSON, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued September 17, 1991.
Decided January 9, 1992.
*52 Before Judges MICHELS, O'BRIEN and CONLEY.
Frederick A.O. Schwarz, a member of the New York Bar admitted pro hac vice, argued the cause for appellant (Lowenstein, Sandler, Kohl, Fisher & Boylan, attorneys, Matthew P. Boylan, on the brief).
Mark Paul Cronin, Deputy Attorney General, argued the cause for respondent (Robert J. Del Tufo, Attorney General, attorney, Mark Paul Cronin, Victoria Curtis Bramson and John-Robin M. Quelch, Deputy Attorneys General, of counsel and on the brief).
The opinion of the court was delivered by O'BRIEN, J.A.D.
*53 Defendant Ciba-Geigy Corporation (Ciba) appeals from the denial of its motion to dismiss certain counts of an indictment against it and others on the ground of double jeopardy.[1] We reverse and remand.
Ciba operates a facility in the township of Dover in Ocean County. Chemical manufacturing operations had commenced at the site in the early 1950s. As of January 1970, operations at the site were being conducted by defendant Toms River Chemical Corporation (TRC), then wholly owned by three partners, Ciba Corporation, Geigy Chemical Corporation, and Sandoz Limited. Ciba Corporation and Geigy Chemical Corporation merged on October 21, 1970, to create Ciba-Geigy (Ciba), and in November 1981 Sandoz sold its interest in TRC to Ciba and TRC was merged into Ciba.
During the relevant time, Ciba produced organic dyes, epoxy resins and other products at the site. In 1977, the Department of Environmental Protection (DEP) first issued a certificate for the operation of a nonhazardous solid waste disposal facility to TRC. In 1979, DEP issued TRC a certificate of approved registration and engineering design approval for a ten-year expansion of the landfill, and on March 12, 1981, DEP and TRC executed an administrative consent order (1981 ACO) providing for the closure of Cell 1 of the landfill and the opening and operation of Cell 2 upon certain terms and conditions set forth in the 1981 ACO. The landfill approval provided for the disposal of solid waste consisting of sludge from TRC's effluent treatment plant and certain specified dry, nonhazardous chemical *54 waste, but prohibited TRC from placing any liquid or hazardous materials in the landfill.
The DEP conducted investigations of Cell 2 during 1984 and determined that some of the approximately 14,000 55-gallon drums which had been deposited in Cell 2 by Ciba contained liquid and many of the drums contained hazardous waste due in part to excessive amounts of Toluene, an industrial solvent, contained in the waste. DEP concluded that TRC and Ciba, as its successor, violated the landfill approval, the Solid Waste Management Act, N.J.S.A. 13:1E-1 et seq., and the regulations promulgated thereunder by depositing liquid and hazardous wastes into Cell 2. It also concluded that Ciba violated the Water Pollution Control Act, N.J.S.A. 58:10A-1 et seq., and the regulations promulgated thereunder by accepting waste from outside sources for treatment at the waste water treatment plant. DEP further concluded that the company violated the 1981 ACO by (1) failing to fully characterize waste deposited in Cell 2 and report said characterization to DEP; (2) failing to characterize new waste generated by manufacturing process changes and report same to DEP; and (3) failing to submit reports to DEP concerning liner integrity. Thus, DEP demanded that the company take remedial action.
In the face of that demand for remedial action, Ciba and DEP entered into an administrative consent order dated April 25, 1985 (1985 ACO), under the terms of which Ciba agreed to remove the drums deposited in Cell 2 at its own cost and expense and to provide an irrevocable letter of credit in the amount of $5,000,000 to secure implementation of the removal plan, to appoint a work coordinator to oversee implementation of the order, and to reorganize its environmental structure pursuant to the specific terms of the order. The order also provided that Ciba pay $200,000 representing reimbursement to DEP for "(i) expenses heretofore incurred by DEP in investigating the operations of Cell 2, reviewing the Removal Plan, and other expenses related to the investigation of the violations set forth in this Order; and (ii) expenses to be incurred in the *55 future by DEP in monitoring the implementation of the Removal Plan."
The significant provisions of the 1985 ACO for purposes of this appeal are as follows:
22. There is hereby levied upon the Company, and the Company hereby agrees to pay to the Department within thirty (30) days of the effective date of this Order by certified check payable to the Department, a civil penalty in the amount of $1,450,000.00 representing a penalty for violations pertaining to the operation of Cell 2, for the acceptance of outside waste at the waste water treatment plant, and for the violations of the 1981 Consent Order as described in paragraph 11 of this Order.
....
36. Nothing contained in this Order or in any of the statements made by the Company to the Department, or by the Department to the Company, in connection with the negotiation or execution of this Order shall be deemed to constitute an admission by the Company or the Department of any fact or conclusion of law or to constitute a waiver of any defense or other position the Company or the Department may take with respect to any of the matters referred to herein, or otherwise be used as probative of any fact in any proceeding of a civil or criminal nature; provided, however, that nothing in this paragraph shall relieve the Company of its obligation of full compliance with all of the terms and conditions set forth herein.
At the end of the 1985 ACO, the following unnumbered paragraph appears:
RESERVATION OF RIGHTS
This Order shall be fully enforceable in the New Jersey Superior Court upon the filing of a summary action for compliance pursuant to N.J.S.A. 13:1D-1, et seq., the Solid Waste Management Act, N.J.S.A. 13:1E-1, et seq., and the Water Pollution Control Act, N.J.S.A. 58:10A-1 et seq. This Order may be enforced in the same manner as an Administrative Order issued by the Department pursuant to these same statutory authorities and shall not preclude the Department from taking whatever action it deems appropriate to enforce the environmental protection laws of the State of New Jersey in any manner not inconsistent with the terms of this Order; provided, however, that upon the Company's payment of the civil penalties referred to in paragraph 22 and the expenses referred to in paragraph 23, and upon the complete performance of the Removal Plan, the Department shall not seek any other penalties from the Company with respect to any of the matters referred to in paragraphs 9 through 11 of this Order. It is understood that this order shall resolve all charges the Department might bring based upon information available to the Department as of the effective date of this order, relating to the depositing of materials in Cell 2 or relating to the acceptance of outside waste into the waste water treatment plant, as set forth in paragraphs 9 through 11 of this Order, *56 except as provided by paragraph 24(h). No other matters are intended to be resolved by the signing of this Order. It is understood that this Order shall in no way be deemed to settle any matters insofar as they might result in the criminal liability of the Company or any of its past or present employees or officers. It is hereby acknowledged that the New Jersey Division of Criminal Justice is not a party to this document and is not bound in any way by the provisions herein.
It is undisputed that Ciba has fully complied with the provisions of the 1985 ACO, having implemented the removal plan at a cost, it contends, in excess of the $5 million set as security, paid the $200,000 for expenses, as well as the $1.45 million civil penalty.
On October 24, 1985, the State Grand Jury returned Indictment No. SGJ 147-85-2 against the same defendants here involved together with two other individual defendants. That indictment was dismissed in the Law Division on a finding that there were not twelve grand jurors qualified to vote on the indictment. We reversed that dismissal on January 20, 1988. See State v. Ciba-Geigy Corp., 222 N.J. Super. 343, 536 A.2d 1299 (App.Div. 1988). Cross petitions for certification were granted by the Supreme Court, 111 N.J. 574, 575, 546 A.2d 502 (1988).
Meanwhile, on February 16, 1988, the State Grand Jury returned Indictment No. SGJ 195-87-4, which included some of the charges made in Indictment No. SGJ 147-85-2. At the request of the State, the proceedings concerning SGJ 147-85-2 were remanded to the trial court and dismissed on January 27, 1989.
The defendants, including the individual defendants, moved to dismiss certain counts of Indictment No. SGJ 195-87-4 on various grounds, all of which were denied by an order dated July 20, 1990. This appeal is taken by Ciba from the provisions of paragraph 17 of that order, which reads as follows:
It is further ORDERED that defendant Ciba-Geigy's motion to dismiss those Counts of State Grand Jury Indictment No. 195-87-4 that charge Ciba-Geigy with criminal conduct previously punished by a 1985 Administrative Consent Order between Ciba-Geigy and the New Jersey Department of Environmental *57 Protection, on the grounds that said counts expose defendant to double jeopardy, is denied as to all such counts.
As noted in footnote 1, the individual defendants have filed letters joining in the arguments advanced on appeal, but we conclude they are without standing because they were not parties to the 1985 ACO. Furthermore, their motion to dismiss the indictment was not based upon a claim of double jeopardy according to the court's order.
Ciba appealed from the denial of its motion to dismiss the indictment on double jeopardy grounds. We granted the State's motion to dismiss that appeal since it was not a final judgment. We also denied Ciba's motion for a finality determination and for summary reversal. We then granted Ciba's motion for leave to appeal nunc pro tunc and denied leave to appeal. Ciba's petition for certification, which the Supreme Court considered as an application for leave to appeal, was granted and the matter was summarily remanded to us for consideration of the appeal on the merits.
Defendant's trial brief suggests that the charges in Indictment No. 195-87-4 "were based entirely upon the allegedly unlawful conduct that was punished in the [1985 ACO] (i) the allegedly unlawful disposals into the landfill and (ii) the allegedly false descriptions of those disposals that were submitted to the State." Actually, before the motion judge, it contended only that the conduct punished by the 1985 ACO overlaps at least with counts 18, 20, 21, 22, 24 and 25 in their entirety, with most of the alleged acts underlying counts 3 through 17 and overt act 71 of count 1.
Our analysis of the indictment reveals that count 1 charges conspiracy, listing 71 overt acts, only one of which defendants apparently contended before the motion judge, i.e., No. 71, overlaps the 1985 ACO. Count 2 charges only individual defendants Bobsein and McPherson with corporate misconduct. The indictment refers to landfills 1507B, 1507C and 1507D. Many of the overt acts in count 1 refer to Cell 1 of the new lined landfill which we understand to be 1507C. Overt act number 25 *58 refers to landfill 1507C as Cell 1 and 1507D as Cell 2. It therefore appears that, even if defendants are correct in their double jeopardy argument, only those counts concerning 1507D or Cell 2 would be subject to dismissal, and not the entire indictment as suggested by Ciba in its brief.
In denying defendant's motion, the motion judge, after an extensive recitation of the conflicting arguments of the parties, made findings of fact and conclusions of law. It is not clear whether the judge concluded that the $1.45 million constituted punishment, as defined by the United States Supreme Court in United States v. Halper, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), or was remedial. The judge seems to have concluded from the language of the 1985 ACO that Ciba agreed that the civil penalty imposed was remedial and not penal, and thus could not in any way bar a future criminal proceeding. He concluded that Halper did not apply because the 1985 ACO entered into between DEP and Ciba did not purport to settle all damages in the matter, observing that defendant admitted no violations. The judge concluded:
The ACO makes no effort or claim to cover the matters contained in the present indictment.
It concludes a civil penalty of $1.45 million for violations pertaining to the operation of Cell 2, for the acceptance of outside wastes at the waste water treatment plant and for the violations of a 1981 consent order. It is a negotiated settlement of the administrative penalties then pending, nothing more.
He observed that the 1985 ACO specifically states that Ciba was not paying criminal penalties and that it understood it would still be subject to criminal prosecution. He found his decision supported by the reasoning of the District Court in United States v. Marcus Schloss & Co., Inc., 724 F. Supp. 1123 (S.D.N.Y. 1989).
The judge concluded that Ciba "knowingly, intelligently, freely, voluntarily, intentionally, purposefully in a legal and in a legally binding fashion agreed that the ACO was remedial and not penal and did not act in any way to bar a future criminal proceeding." He found that the plain language of the reservation *59 of rights clause reflects a recognition by Ciba that the order "shall in no way be deemed to settle any matters insofar as they might result in the criminal liability of the company or any of its past or present employees or officers." He found it obvious that this clause expressed a recognition by Ciba that it could be prosecuted criminally and punished for the same conduct which was the subject matter of the 1985 ACO, notwithstanding the included civil penalty. This suggests waiver of double jeopardy as a defense.
On the other hand, Ciba persuasively responds by noting the provisions of paragraph 36, which specifically provide that nothing in the 1985 ACO constitutes a waiver of any defense it may have in any proceeding of a civil or criminal nature. Ciba therefore contends it did not waive its right to argue that a subsequent prosecution would constitute double jeopardy. The motion judge observed, however, that Ciba "admits that although this clause plainly evinces the company's intention to preserve all rights and defenses, it may appear potentially at odds with the reservation of rights at the conclusion of the ACO."
On this appeal, in response to the obvious conflict between those two clauses insofar as they relate to a defense of double jeopardy, Ciba argues it was unaware that imposition of the civil penalty placed it in jeopardy so that a subsequent criminal prosecution would constitute double jeopardy until the United States Supreme Court decision in Halper. Ciba correctly notes that a valid waiver of a constitutional right must be a voluntary relinquishment of a known right. Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed.2d 1461 (1938). Therefore, four issues are presented: (1) whether the civil penalty was of such an amount as to constitute retribution and deterrence, i.e., punishment rather than remediation; (2) if the civil penalty is found to be punitive rather than remedial, whether Ciba waived its right to argue that that penalty placed it in jeopardy and thus the criminal prosecution places it in double jeopardy; (3) whether Halper applies at all since the civil proceedings came *60 first, whereas in Halper the criminal proceedings came first; and (4) whether the claim of double jeopardy is premature.
As to the first point, the motion judge seems to have concluded that by entering into the 1985 ACO Ciba agreed that the civil penalty was remedial and not penal. We disagree. There is nothing in the 1985 ACO to suggest an agreement by Ciba that the civil penalty imposed is remedial rather than punitive. Because of this erroneous conclusion, the motion judge did not perform a Halper analysis to determine whether the $1.45 million civil penalty, all or any part of it, was punitive rather than remedial. This determination is one which the Halper Court left for inquiry and decision by the trial judge, acknowledging that it may not be an exact pursuit since previous cases note that the precise amount of a government's damages and costs may prove to be difficult, if not impossible, to ascertain. Yet, the Halper court said:
We must leave to the trial court the discretion to determine on the basis of such an accounting the size of the civil sanction the government may receive without crossing the line between remedy and punishment. Halper, 490 U.S. at 450, [109 S.Ct. at 1903] 104 L.Ed.2d at 502.
In this pursuit, a hearing is necessary, starting with a consideration of the penalty imposed, here $1.45 million. The DEP must offer an explanation as to how that sum was computed. Also at this hearing, the deputy attorney general quoted in newspaper articles submitted to us[2] could be produced to explain his comments. If this civil penalty is intended to be remedial, evidence must be presented to support that contention, although admittedly impossible to prove with precision as recognized by Halper. Since the motion judge has not undertaken this inquiry, it is necessary to remand the matter to him for that purpose.
*61 In addition to his conclusion that Ciba agreed that the $1.45 million civil penalty was remedial, the judge concluded that Ciba waived its right to argue that the criminal charges placed it in double jeopardy. Ciba responds that it was unaware that imposition of the civil penalty had placed it in jeopardy, such that a subsequent criminal prosecution would constitute double jeopardy. See Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967); United States v. Reader's Digest Assoc., 464 F. Supp. 1037 (D.Del. 1978), aff'd, 662 F.2d 955 (3rd Cir.1981), cert. denied, 455 U.S. 908, 102 S.Ct. 1253, 71 L.Ed.2d 446 (1982). It argues that the conclusion that a civil penalty may be of such a magnitude as to go beyond a remedial purpose and become retributive and deterrent, thus constituting punishment, was not decided until the Halper decision in 1989, whereas the ACO was entered into in 1985. The motion judge apparently disagreed.
We express no opinion on the waiver issue. However, if on the remand herein ordered, the judge concludes that the civil penalty is in fact punishment in the Halper sense, we direct him to reconsider the question of waiver. While the motion judge recognized the conflict between paragraph 36 of the 1985 ACO, "in which nothing contained in the 1985 ACO was to constitute a waiver of any defense ... in any proceeding of a ... criminal nature," which he said is potentially "at odds with the reservation of rights at the conclusion of the ACO," he did not address this conflict in reaching his conclusion that Ciba had waived its right to assert a claim of double jeopardy in the subsequent criminal proceeding.
In pursuit of this issue, the judge may wish to examine the state of the law before Halper concerning civil penalties which may constitute punishment as they relate to the Double Jeopardy Clause, based on a rule of statutory construction. See, e.g., Helvering v. Mitchell, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917 (1938). The author of a Law Review article suggests that prior to Halper the Supreme Court's decisions implied:

*62 [f]irst, that a civil penalty could not be held to be criminal without first holding that the statute itself was criminal in purpose or effect; second, that the remedial nature of a civil sanction was not counteracted by recovery in excess of the actual damages; and third, that civil sanctions with deterrent components, such as liquidated damages, double or treble damages, or penalty awards calculated on a per offense basis would not as a general rule, rise to the level of punishment for purposes of double jeopardy analysis.
[Note, Civil Sanctions and the Double Jeopardy Clause: Applying the Multiple Punishment Doctrine to Parallel Proceedings after United States v. Halper, 76 Virginia Law Review 1251, 1263 (1990).]
The judge may also wish to consider In re Garay, 89 N.J. 104, 444 A.2d 1107 (1982), a New Jersey case factually similar to Halper, in reaching a determination as to whether Halper represents a change in the law on this issue subsequent to the 1985 ACO, as argued by Ciba.
Further, if after a Halper hearing, the judge concludes that the civil penalty was in fact punishment, he should then examine the question whether Halper applies since, in Halper, the criminal prosecution came first followed by the civil proceedings imposing the civil penalty, whereas, in this case, the civil proceeding came first followed by the criminal proceeding. In examining that question, the motion judge may wish to consider the case he cited in support of his conclusions, United States v. Marcus Schloss & Co., Inc., 724 F. Supp. 1123 (S.D.N.Y. 1989), which found the sequence of the civil and criminal proceedings irrelevant to the principle of Halper. He might also wish to consider United States v. Bizzell, 921 F.2d 263 (10th Cir.1990), where the Court first quoted the following from Halper:
We therefore hold that under the Double Jeopardy Clause a defendant who already has been punished in a criminal proceeding may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution. Halper, 109 S.Ct. at 1901-1902. [Bizzell, 921 F.2d at 267]
Yet, following that quotation, which seems to premise the rule of law on the criminal proceeding coming first, the Bizzell court further stated:
This case, of course, presents the opposite situation. The civil penalties were exacted before the indictment was returned, but the distinction is not significant. The question is still whether the civil remedies can be fairly described as remedial. [Bizzell, 921 F.2d at 267]
*63 We call to the judge's attention, without comment whether it is correct, the following language used by our court in State v. Darby, 246 N.J. Super. 432, 587 A.2d 1309 (App.Div. 1991):
Here the civil penalty proceedings are complete. If punitive penalties were imposed, according to the Halper standard, they serve to bar the State from seeking further punishment by way of criminal proceedings for the same conduct. We need not decide whether the double jeopardy bar to criminal proceedings can be removed by returning, before the criminal trial, to the Chancery Division to reduce to a legitimate level the monetary penalties already imposed there. The State has made no effort to take that course. [Id. at 445, 587 A.2d 1309]
In deciding the applicability of Halper, the judge may also wish to consider the following language from Halper itself:
What we announce now is a rule for the rare case, the case such as the one before us, where a fixed-penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused. [490 U.S. at 449, 109 S.Ct. at 1902]
We do not consider our ruling far reaching or disruptive of the Government's need to combat fraud. Nothing in today's ruling precludes the Government from seeking the full civil penalty against a defendant who previously has not been punished for the same conduct, even if the civil sanction imposed are punitive. In such a case the Double Jeopardy Clause simply is not implicated. Nor does the decision prevent the government from seeking and obtaining both the full civil penalty and the full range of statutorily authorized criminal penalties in the same proceeding. In a single proceeding the multiple-punishment issue would be limited to ensuring that the total punishment did not exceed that authorized by the legislature. [490 U.S. at 450, 109 S.Ct. at 1903]
In other words, the only proscription established by our ruling is that the Government may not criminally prosecute a defendant, impose a criminal penalty upon him, and then bring a separate civil action based on the same conduct and receive a judgment that is not rationally related to the goal of making the Government whole. [490 U.S. at 451, 109 S.Ct. at 1903]
The judge must decide whether the fact that the civil proceeding occurred first distinguishes this case from Halper, or whether the sequence of the proceedings is irrelevant, as found by the Bizzell and Marcus Schloss courts.
Lastly, the judge should decide whether Ciba's motion to dismiss the indictment on the ground of double jeopardy is premature. In United States v. Bizzell, supra, the Tenth Circuit revisited the double jeopardy clause saying,

*64 We commence our analysis with a brief visit to the Double Jeopardy Clause itself. Although defendants would like us to blur distinctions, there are three prongs to the Double Jeopardy Clause:
"The Double Jeopardy Clause protects against a second prosecution for the same offense after acquittal. It protects against the second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.' Brown v. Ohio, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977) (quoting North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969)).
The Bizzells argue vociferously that the administrative complaint constituted a `prosecution' for double jeopardy analysis, but we are not persuaded. Jeopardy attaches only in a criminal proceeding, United States ex rel. Marcus v. Hess, 317 U.S. 537, 548-49, 63 S.Ct. 379, 386-87, 87 L.Ed. 443 (1943); Helvering v. Mitchell, 303 U.S. 391, 397-98, 58 S.Ct. 630, 632-33, 82 L.Ed. 917 (1938); when the jury is impanelled and sworn, or in a bench trial when the court begins to hear evidence. Serfass v. United States, 420 U.S. 377, 388, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265 (1975). Since none of these events occurred prior to the return of the indictment in this case, we are not concerned with the first two prongs of the Double Jeopardy Clause because defendants are not threatened with a second prosecution for the same offense.
The only question raised by defendants' motion is whether they were subjected to `punishment' in the civil proceedings within meaning of the third prong of the Clause. [Bizzell, 921 F.2d at 266]
As noted, in Bizzell as in this case, the civil penalties were exacted before the indictment was returned, the reverse of what occurred in Halper. The Bizzell court found that distinction insignificant. On the remand herein ordered the judge must decide that question to determine whether Halper has any application at all.
In Bizzell, the Court analyzed the defendants' claim as only raising a question as to whether defendants were subjected to punishment in the civil proceeding within the meaning of the third prong of the double jeopardy clause. However, since the Bizzell court concluded that the debarment provisions of the settlement agreement were not punitive and the $30,000 assessment was not punishment, it did not continue its analysis. However, continuing the analysis started by the Bizzell court may lead the judge on the remand herein ordered to conclude that Ciba's motion is premature.
The question the judge must address, if he concludes that the civil penalty imposed as part of the 1985 ACO was punishment, *65 is whether the mere return of an indictment incorporating some of the same conduct covered by the 1985 ACO, placed Ciba in jeopardy of being punished again for the same conduct. As in Bizzell, this indictment is the first "prosecution," and thus not double jeopardy under the first two prongs of the clause, but only implicates a question of multiple punishment for the same offense under the third prong. The suggestion by the Halper court that the government may seek both the full civil penalty and the full range of authorized criminal penalties in the same proceeding may support the view that mere return of the indictment does not constitute double jeopardy under the punishment prong of double jeopardy.[3]
Reversed and remanded for a hearing at which the motion judge will decide whether (1) the civil penalty imposed in the 1985 ACO was punishment in the Halper sense and, (2) if he concludes it was, readdress and decide whether Ciba waived its right to assert the defense of double jeopardy in spite of the provisions of paragraph 36 of the 1985 ACO. In addition, the judge shall decide (3) whether the fact that the civil penalty was imposed first in this case, whereas in Halper, the criminal proceedings came first, affects the applicability of the Halper decision to this case; and (4) the judge shall decide whether assertion of the defense of double jeopardy is premature since only the punishment prong of double jeopardy is implicated. Since the indictment is now almost four years old, we direct that the hearing on remand be scheduled and completed forthwith. We do not retain jurisdiction.
NOTES
[1] Defendant Toms River Chemical Corporation is a division of Ciba. Defendants William P. Bobsein and James A. McPherson are employees of Ciba. Counsel for the individual defendants have filed letters joining in the arguments of Ciba. However, since Ciba's argument is based upon an administrative consent order with the Department of Environmental Protection to which it was a party and the individual defendants were not and the individual defendants' motion to dismiss the indictment was not on the ground of double jeopardy, we conclude they have no standing in this appeal.
[2] Although the State contends these articles were not presented to the trial judge, Ciba disputes this, claiming they were included in an appendix to a reply memorandum in support of defendants' motion for a change of venue.
[3] But see Linda S. Eads, Separating Crime from Punishment; The Constitutional Implications of United States v. Halper, 68 Wash.U.L.Q. 929, 953 (1990) (the Court ignored a basic justification for double jeopardy protection  an accused's interest in finality). See also State v. Darby, supra, 246 N.J. Super. at 445, 587 A.2d 1309, which seems to suggest as a remedy the reduction of the civil penalty, found to be punitive, to a "legitimate level."