668 A.2d 423

IN THE MATTER OF THE EXPUNGEMENT OF THE CRIMINAL
RECORD OF M.D.Z., PETITIONER–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted September 19, 1995—Decided December 14, 1995.

Before Judges DREIER, KESTIN and CUFF.

*Robert B. Cherry,* attorney for appellant (*Ronda L. Casson,* on the brief).

*Charles R. Buckley,* Deputy Attorney General In Charge, Acting Bergen County Prosecutor, attorney for respondent (*Susan W. Sciacca,* Special Deputy Attorney General, Acting Assistant Prosecutor, of counsel and on the letter brief).

*Deborah T. Poritz,* Attorney General, *amicus curiae* (*Stephen H. Monson,* Deputy Attorney General, of counsel; *Mr. Monson* and *William J. Zaorski,* Deputy Attorney General, on the letter brief).

The opinion of the court was delivered by

KESTIN, J.A.D.

Petitioner applied for an order of expungement pursuant to statute, *N.J.S.A.* 2C:52–1 to –32. After a hearing, the trial court entered an order providing that all records relating to criminal charges arising from a June 9, 1992 arrest of petitioner be expunged. The order also granted the State's motion to dismiss the petition for expungement as it pertained to a domestic violence case arising from the same incident, and to a related matrimonial action. Petitioner appeals from the latter provision. We affirm.

On June 9, 1992, Hackensack police officers responded to a report of a domestic incident in the apartment occupied by petitioner and his spouse. They received a report from the spouse, Mrs. Z, that petitioner had threatened her with a gun and the statement "I'm going to kill you." The police officers seized three firearms—two registered pistols and an unregistered assault rifle—along with ammunition and some large capacity ammunition magazines. They arrested petitioner, and charged him in criminal complaints with making a terroristic threat, a third degree crime; unlawful possession of an assault firearm, also a third degree crime; and unlawful possession of several large capacity ammunition magazines, a fourth degree crime.

On the same date, pursuant to a domestic violence complaint filed by Mrs. Z, a temporary restraining order was issued barring petitioner from the marital residence. A week later, Mrs. Z also filed a complaint for divorce. On July 14, 1992, the parties entered into a consent order in the matrimonial case, *inter alia,* extending the restraint on petitioner from entering the marital residence.

By early September, Mrs. Z had withdrawn the domestic violence complaint and the State, at her behest, withdrew the terroristic threat charge. By the end of September, the parties had filed a stipulation dismissing the matrimonial action. They had reconciled. Subsequently, petitioner and the State agreed that in exchange for petitioner's surrender of the unregistered assault

rifle, the two registered pistols would be returned to him, and the unlawful possession complaint would be dismissed.

Finally, in June 1994, petitioner moved for expungement of all records relating to the criminal complaints, the domestic violence matter, and the matrimonial action. The State agreed to the expungement request in respect of the criminal complaints, but objected to any expungement relative to the domestic violence matter or the matrimonial action. As we have noted, the trial court granted the relief sought in the expungement petition only as to the criminal charges, holding that the statutory policy of expunging records connected with criminal charges or convictions does not extend to non-criminal matters such as domestic violence proceedings or matrimonial actions.

After reviewing the record in the light of the arguments advanced by the parties, we are in substantial agreement with the bases of decision articulated by Judge Jonathan N. Harris in his on-the-record opinion of September 8, 1994. We add some words of elaboration.

In a recent case, *In the Matter of the Petition of Anthony Podias,* 284 *N.J.Super.* 674, 677–78, 666 *A.*2d 209 (App.Div.1995), we interpreted the breadth of the expungement statute, *N.J.S.A.* 2C:52–1 to –32, by relying on the principle of statutory construction articulated by the Supreme Court in *State v. Churchdale Leasing Inc.,* 115 *N.J.* 83, 101, 557 *A.*2d 277 (1989): "[w]hen a statute is clear on its face, a court need not look beyond the statutory terms to determine the legislative intent. *State v. Butler,* 89 *N.J.* 220, 226 [445 *A.*2d 399] (1982)." A reading of the expungement statute discloses an expressed design to deal only with criminal charges and their consequences. Even the definition of expungement is so restricted.

Except as otherwise provided in this chapter, expungement shall mean the extraction and isolation of all records on file within any court, detention or correctional facility, law enforcement or criminal justice agency concerning a person's detection, apprehension, arrest, detention, trial or disposition *of an offense within the criminal justice system.* (emphasis supplied).

[*N.J.S.A.* 2C:52–1a.]

The statute goes on to include within its scope "all cases [except for specified matters] wherein a person has been convicted of a crime under the laws of this State and who has not been convicted of any prior or subsequent crime...." *N.J.S.A.* 2C:52–2a. Where offenses not traditionally considered "crimes" have been seen to carry consequences that ought to be subject to expungement, the Legislature has expressly provided for such treatment. *See, e.g., N.J.S.A.* 2C:52–3 (disorderly persons and petty disorderly persons offenses); –4 (violations of municipal ordinances); –4.1 (juvenile delinquency). The Legislature has also provided for expungement in respect of crimes otherwise excluded from the scope of the statute where particular characteristics exist, *N.J.S.A.* 2C:52–5 (records of young drug offenders), and for arrests "for a crime, disorderly persons offense, petty disorderly persons offense or municipal ordinance violation" where a conviction did not result because of a dismissal, acquittal or discharge, *N.J.S.A.* 2C:52–6. Because this case involved charges that were withdrawn or dismissed, it is only under the latter provision that the trial court had jurisdiction to consider petitioner's application.

■ Where the Legislature has been so meticulous in establishing what is within the scope of a statute, a court is hard-pressed to expand that coverage by divining a legislative purpose that is more inclusive. It is clear, from both the specific provisions of the expungement statute and its general tenor, that the Legislature intended it to encompass only criminal charges and their consequences. *See State v. M.,* 188 *N.J.Super.* 533, 535–36, 457 *A.*2d 1237 (Law Div.1982).

■ Notwithstanding that the Prevention of Domestic Violence Act of 1991 and its predecessors have been placed by the compilers of our statutes in Title 2C, the Code of Criminal Justice, it is obvious that, except where an instance of domestic violence implicates specific criminal offenses, *see, e.g., N.J.S.A.* 2C:25–21, –26.1, –27, –28a (third paragraph), and :29–9b, the remedies provided in the Act are civil in character, *Roe v. Roe,* 253 *N.J.Super.* 418, 428, 601 *A.*2d 1201 (App.Div.1992); *State v. Solomon,* 262 *N.J.Su-*

*per.* 618, 621–23, 621 *A.*2d 559 (Ch.Div.1993). Manifestly, therefore, while a criminal charge and its related consequences that arise from a domestic incident may be subject to expungement, a domestic violence complaint arising from the same incident, in which the victim seeks restraints and other civil relief, is not. *See E.A. v. New Jersey Real Estate Comm'n,* 208 *N.J.Super.* 65, 504 *A.*2d 1213 (App.Div.), *certif. denied,* 104 *N.J.* 415, 517 *A.*2d 413 (1986). By the same reasoning, a matrimonial action that includes reference to an alleged act of domestic violence, is not, merely because of its remote factual connection with an arrest on a criminal charge, subject to treatment itself as if it were a criminal matter.

■ The trial court's order in this matter was well framed to require expungement of all criminal record references to the precipitating incident, including arrest records, criminal charges, fingerprint and other identification records, and investigative materials. The clear sense of this order is to prohibit any agency of government connected with the criminal process from having any record or other basis for divulging the fact of petitioner's arrest on the charges that arose from the reported instance of domestic violence. Equally clear, nothing is to be removed from court records or the files of any agency connected with the civil matters. Judge Harris highlighted one of the reasons for the difference in treatment from a policy standpoint,

> because of the possibility ... of future Family Part matters being filed and the Family Part judge needing to have a history because one of the things that a judge has to take into account is any prior history of domestic violence.

*See, e.g., N.J.S.A.* 2C:25–24b(9), –29a(1), –33. The sense of the provision from which petitioner appeals is that civil case records will remain on file in unexpurgated form, subject, however, to the confidentiality protections embodied in the Prevention of Domestic Violence Act of 1991. *N.J.S.A.* 2C:25–33 (last paragraph). The dichotomous treatment of criminal and civil records embodied in the trial court's order is manifestly in keeping with the Legislature's intendment. *See Pepe v. Pepe,* 258 *N.J.Super.* 157, 164–65, 609 *A.*2d 127 (Ch.Div.1992).

We are not persuaded to the contrary by the public policy arguments advanced by petitioner. If these arguments are designed to establish that the scope of the statute should be broadened, they should be addressed to the Legislature, not a court. If these arguments are offered to persuade us to apply the statute in order to further some unexpressed, underlying intendment, we repeat that purposive construction is ill-advised where the legislative design is clear on the face of a statute, *i.e.*, where neither the enactment nor its purpose can reasonably be seen as ambiguous in any way.

One of the policy arguments made by petitioner relates to the stigma he may suffer in the future as a result of the allegations of domestic violence. Indeed, the concern over unwarranted stigma is at the basis of the expungement statute, yet the Legislature has not seen fit to extend its effacing effect to civil matters. Instead, as we have noted in respect of the issue before us, the Legislature has provided for the confidentiality of all records maintained pursuant to our domestic violence legislation.

Another "policy" argument made by petitioner focuses on "the misuse and trivialization of the domestic violence laws in the hands of unscrupulous 'victims.'" Such an argument, if it could be seen as having any merit at all, has no weight whatsoever when it is advanced by a party who has been accused of brandishing a firearm while uttering the threat "I'm going to kill you." With a full understanding that the truth or falsity of the allegation was never established because all complaints, criminal and civil, were withdrawn, we can hardly view the reported incident as trivial or, in any way, a misuse of the State's domestic violence legislation. Even if provoked, as petitioner alleges he was in portraying himself as a "classic" victim of the misuse of domestic violence laws, there is no justification for the conduct alleged. To characterize the actor as the victim is to turn the law on its head.

Affirmed.