719 A.2d 652

## IN RE JOHN S. D'ACONTI, D.O.

Superior Court of New Jersey
Appellate Division

Argued October 7, 1998—Decided October 23, 1998.

4

Before Judges KING, NEWMAN and FALL.

*Keith J. Burns*, argued the cause for appellant John S. D'Aconti, D.O. (*Richmond, Hochron & Burns*, attorneys; *Linda R. Brower*, on the brief).

*Steven N. Flanzman*, Deputy Attorney General, argued the cause for respondent New Jersey State Board of Medical Examiners (*Peter Verniero*, Attorney General, attorney; *Andrea M. Silkowitz*, Assistant Attorney General, of counsel, *Mr. Flanzman*, on the brief).

The opinion of the court was delivered by

NEWMAN, J.A.D.

Petitioner, Dr. John S. D'Aconti, appeals the New Jersey Board of Medical Examiners' (Board) decision denying him leave to file a petition for modification of a consent order, disciplining him for failing to keep adequate patient medical records, entered into by petitioner and the Board on February 4, 1986. Petitioner asserts that public disclosure of the order has caused managed health care organizations to refuse petitioner panel status thereby interfering with his right to pursue his livelihood. Petitioner contends that the Board's failure in 1996 to afford him a hearing and expunge or modify the order resulted in violations of his constitutional rights. Petitioner asks this court to order the Board to modify or expunge the 1986 order, or, alternatively remand the matter to the Board so that a full presentation may be made and an appropriate remedy fashioned. We are satisfied that the Board has correctly responded to petitioner and affirm.

The relevant facts may be summarized as follows. In 1985, Dr. D'Aconti learned that he was being investigated by the Board, concerning allegations of over-utilization of physical therapy services to one patient between August 1982 and November 1983. On September 25, 1985, Dr. D'Aconti appeared before the Board's Executive Committee and testified in response to the allegations. On February 4, 1986, the Board filed a public consent order, which was agreed upon by the Board and Dr. D' Aconti, who was then represented by counsel. The order recites the following facts:

1. The Board's investigation commenced upon the Board's receipt of information concerning Dr. D' Aconti's treatment of Marie Kalucki from August 24, 1982 through November 21, 1983.

2. Based upon Dr. D'Aconti's testimony and patient records, the Board concluded that Dr. D'Aconti's reliance on and provision of physical therapy for the duration that it was utilized could not be supported by the information contained in his patient records.

3. Dr. D'Aconti kept inadequate records detailing the therapy he provided.

As a result of these consented-to fact findings, the Board determined that Dr. D'Aconti's failure to maintain adequate medical records constituted a violation of *N.J.A.C.* 13:35–6.5 (rule requir-

ing the maintaining of patient records). Thus, the Board ordered that:

1. Dr. D'Aconti pay $2,500.00 in penalties.

2. Dr. D'Aconti prepare and maintain appropriate patient records documenting the patient's progress where physical therapy services are offered in his office.

3. When delegating the responsibility of administering physical modalities in his office, respondent shall comply with all of the provisions of *N.J.A.C.* 13:35–6.14 (setting forth the scope of delegable activities and continuing responsibility that the delegating physician must bear).

The consent order was the only public document filed in this matter, and was then, and is now, considered by the Board to be the final order entered of record. As a result, since the date it was filed, February 4, 1986, any member of the public who inquired of the Board whether any public information existed concerning Dr. D'Aconti would, pursuant to the Right to Know Law, *N.J.S.A.* 47:1A–1, have been advised of the consent order, and any individual requesting the order would have been furnished a copy.

Following entry of the consent order, this matter remained dormant for over eight years until June 24, 1994 when the Board received correspondence from Anthony Malanga, Dr. D'Aconti's counsel at the time the initial order was negotiated. The letter related that dissemination of the order to various HMOs and other health insurance plans presumably led to Dr. D'Aconti's being denied participation by these HMOs and health insurance groups as a medical referral panelist. The letter requested that the Board rescind the public disclosure of the order.

The Board's Executive Director responded to the letter, stating that "this Board is not in a position to rescind the publicizing of an informal resolution since the enclosed is a public order and not an informal private resolution."

Subsequently, by letter dated August 29, 1996, Dr. D'Aconti, through present counsel, wrote to the Board explaining the unintended disciplinary effect that the consent order was having on him and requesting that the Board take action to prevent further harm. The letter explained that:

... the presence of the Consent Order, together with the advent of the managed care credentialing process, has caused Dr. D'Aconti direct and certain irreparable harm. The managed care organizations have focused on the fact of this Order, whose effect could not have been anticipated as far back as 1986, as a means of deselecting physicians from their panels. The effect of this practice, whether denied or not by managed care directors, has had the unintended disciplinary effect, where no discipline was originally imposed by the [Board]. The effect of the Order, as far as its impact on Dr. D'Aconti's Medicaid practice has been tantamount to the [Board], in 1986, having revoked or suspended his medical license.

In the August 29, 1996 letter, Dr. D'Aconti also petitioned the Board to review the action of the prior Board and to modify or expunge the 1986 consent order.

The Board considered the aforementioned letter at its September 1996 meeting. Dr. D'Aconti was not present during this meeting. The minutes from the Board meeting reflect that the letter was treated as a request for leave to file a petition to modify the 1986 order. The Board, upon the advice of the Attorney General, voted to deny Dr. D'Aconti's leave to file a petition for modification of the 1986 order, and further voted that it would not grant Dr. D'Aconti an appearance before the Board or a Committee of the Board to discuss the matter. The Board's Minutes provide that the advice of the Attorney General's office was that "there is no basis to tell the attorney anything other than her client has an order on file, the effect is the doctor's problem, and the terms of the order are clear." Subsequently, by letter dated September 17, 1996 to Dr. D'Aconti, the Board's Deputy Executive Director reported on the votes of the Board at the meeting, rejecting Dr. D'Aconti's request for a hearing and request for modification of the order.

## I.

Petitioner, arguing that the consent order serves as an unconstitutional partial forfeiture of his medical license, first seeks to have the Board expunge the order. Expungement is a legislatively authorized remedy, expressly limited to certain prescribed criminal, quasi-criminal, juvenile and other enumerated offenses. N.J.S.A. 2C:52–2 to –6. For many purposes, once an offense has

been expunged, it is deemed not to have occurred. *N.J.S.A.* 2C:52–27.

In interpreting the breadth of the expungement remedy, this court has concluded that the statute expressly applies to only criminal charges. *In re M.D.Z,* 286 *N.J.Super.* 82, 85, 668 *A.*2d 423 (App.Div.1995). "When a statute is clear on its face, a court need not look beyond the statutory terms to determine the legislative intent." *Ibid.* (citing *State v. Butler,* 89 *N.J.* 220, 226, 445 *A.*2d 399 (1982)). We determined in *In re M.D.Z.* that the Legislature intended that the expungement statute encompass only criminal charges and their consequences. *Id.* at 86, 668 *A.*2d 423. Additionally, this court has concluded that the expungement power does not extend to licensing agencies. *See, e.g., E.A. v. New Jersey Real Estate Comm'n,* 208 *N.J.Super.* 65, 68, 504 *A.*2d 1213 (App.Div.) (concluding that the Real Estate Commission is without authority to expunge license suspension despite the fact that plaintiff was granted an expungement order for the underlying criminal offense), *certif. denied,* 104 *N.J.* 415, 517 *A.*2d 413 (1986). Because the expungement power does not extend to licensing agencies, the relief sought by petitioner is beyond the power of the Board to grant.

Petitioner, conceding that the expungement remedy "may have no application to the licensing powers committed to the Board," nonetheless contends that the Board has ancillary powers, which includes the power to expunge. Petitioner urges that there are parallel procedures that the Board could use, such as a *nunc pro tunc* order, to blunt the effect of consent orders on its licensees for credentialing purposes. Alternatively, petitioner argues that inherent in the Board's power to regulate licensees is the power to modify the effects of its orders or ameliorate their unintended consequences.

Absent legislative restriction, administrative agencies have the inherent authority to reopen and modify previous orders. *Skulski v. Nolan,* 68 *N.J.* 179, 195, 343 *A.*2d 721 (1975). The power to reopen and modify final orders, however, must be

exercised reasonably and application seeking its exercise must be made with reasonable diligence. *Ibid.* The Board notes that petitioner's objections were not made with the requisite reasonable diligence because ten years have lapsed since the initial order was entered and the time petitioner brought the current claim. While interim changes in the health care system, including the advent of managed care, may have occurred explaining the delay, it does not otherwise render the application to have been filed within a reasonable period of time.

Nonetheless, there is nothing in the record before us that this matter involves a factual or legal question requiring a reopening and modifying of the Board's prior order. The initial finding requiring the entering of the consent order was based upon petitioner's violations of *N.J.A.C.* 13:35–6.5. No argument has been advanced that the Board's initial finding was erroneous or unsupported by the record. In fact, petitioner, who was represented by counsel, consented to both the form and entry of the 1986 order.

Furthermore, there is nothing in the record to allow this court or the Board to understand precisely what has caused petitioner's membership denial. Petitioner's claims concerning the actions of managed care providers are not supported with any documentation. In a footnote, plaintiff explains:

The parties acknowledge that the 1994 and 1996 actions by managed care organizations have either refused Dr. D'Aconti initial entry onto or may affect his continuing to serve on a panel. For this reason, the writings that constitute these actions have not been included in the Appendix. Should the Court desire to review these writings, Plaintiff shall make them available to the Court for an *in camera* inspection.

Even assuming writings exist indicating that managed health care organizations have either refused petitioner membership or service on a panel, there is still no way of knowing why petitioner was denied enrollment; unless, of course, writings by these organizations expressly provide that petitioner's membership denial was based solely upon the 1986 consent order. The record before this court is devoid of such evidence.

■ Petitioner argues that the Board here has mistakenly exercised its discretion or misperceived its own statutory authority in refusing to act, failing to recognize the constitutional infirmities, and in permitting the consent order to stand. We disagree. The 1986 consent order was legally entered into with petitioner's consent. The Board has authority pursuant to *N.J.A.C.* 13:35–6.5 to file an order and fine petitioner accordingly. The Board has neither abused its statutory authority, nor mistakenly exercised its discretion. *In re Polk,* 90 *N.J.* 550, 578, 449 *A.*2d 7 (1982).

Petitioner urges that we intervene citing *Higgins v. American Society of Clinical Pathologists,* 51 *N.J.* 191, 238 *A.*2d 665 (1968), and *Falcone v. Middlesex County Medical Society,* 34 *N.J.* 582, 170 *A.*2d 791 (1961). Neither case supports petitioner's position. In *Higgins,* the Court concluded that it had jurisdiction over a private association's decision denying recertification to a qualified medical technologist where the facts demonstrated that the exclusion was unreasonable. *Higgins, supra,* 51 *N.J.* at 202, 238 *A.*2d 665. Similarly, in *Falcone,* the Court intervened in a county medical society's exclusion of a physician from membership because it found the unwritten requirement causing the doctor's exclusion to be "patently arbitrary and unreasonable and beyond the pale of the law." *Falcone, supra,* 34 *N.J.* at 598, 170 *A.*2d 791. Here, petitioner is suing the Board, not the purported wrongdoer, the various managed care organizations who have allegedly denied him membership. Petitioner's reliance on *Higgins* and *Falcone* for the proposition that the court should intervene is misplaced.

## II.

Petitioner contends that the Board's failure to review this matter and expunge or otherwise modify the consent order deprives petitioner of his constitutional rights.

■ Before addressing the substance of petitioner's constitutional arguments, we question petitioner's standing to raise the issues presented. In order to have standing, a plaintiff must have suffered an injury in fact, the injury must be "fairly ...

trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court," and it must be likely that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife,* 504 *U.S.* 555, 560, 112 *S.Ct.* 2130, 2136, 119 *L. Ed.*2d 351, 364 (1992).

■ Here, although petitioner may have suffered an injury in fact, he has not demonstrated a causal connection between the harm suffered and the Board's action or inaction. Instead, petitioner's injury is related to the actions of various third-party managed health care organizations who are not before this court. Thus, even if the requested remedy of expungement or modification of the consent order were granted, petitioner's injury may not be redressed by the various third parties. Notwithstanding petitioner's procedural obstacle, we address each of petitioner's constitutional arguments, none of which have merit.

### A. *Ex Post Facto*

Petitioner contends that the Board's failure to review this matter and expunge or otherwise modify the consent order or its punitive effect violates various provisions of federal and state prohibitions against undue punishment thus depriving petitioner of his constitutional rights.

Petitioner makes two arguments that the Board violated the *Ex Post Facto* clause of both the federal and State Constitutions. *U.S. Const.* art. I, § 10, cl. 1; *N.J. Const.* art. IV, § 7, ¶ 3. First, petitioner argues that the existence of the 1986 consent order in the current managed-care market has had the same impact as if the Board had punished petitioner in 1986 for acts that were not punishable at the time they were investigated by the Board. Second, petitioner asserts that the Board's failure to either expunge or modify the consent order constitutes *Ex Post Facto* governmental inaction.

In *Doe v. Poritz,* 142 *N.J.* 1, 43, 662 *A.*2d 367 (1995), in addressing whether Megan's Law violates federal and state *Ex*

*Post Facto* clauses, the Court articulated its formulation of what constitutes an *Ex Post Facto* violation:

> A statute that can fairly be characterized as remedial, both in its purpose and implementing provisions, does not constitute punishment even though its remedial provisions have some inevitable deterrent impact, and even though it may indirectly and adversely affect, potentially severely, some of those subject to its provisions. Such a law does not become punitive simply because its impact, in part, may be punitive unless the only explanation for that impact is a punitive purpose: an intent to punish.
>
> [*Doe v. Poritz, supra,* 142 *N.J.* at 43, 662 *A.*2d 367].

The Court made clear that intent to punish, not punitive impact is dispositive in determining whether an action violates the *Ex Post Facto* clause.

 With respect to the 1986 consent order, the inclusion of the $2,500 fine is a civil penalty. *See Hudson v. United States,* 522 *U.S.* 93, 118 *S.Ct.* 488, 493–94, 139 *L. Ed.*2d 450 (1997) (reiterating that monetary penalties are not viewed as punishment). Further, the ordering of correctional actions, including the proper maintenance of medical records, constitutes the employment of disciplinary measures and sanctions, not punishment. *N.J.S.A.* 45:1–14 to –27 sets forth the disciplinary options available to the Board. Pursuant to *N.J.S.A.* 45:1–21, a Board may revoke or suspend a license; pursuant to *N.J.S.A.* 45:1–22, a Board may enter civil penalties and order the very type of affirmative corrective actions entered in this case.

Petitioner's contention that the Board's failure to expunge or modify the consent order constituted "punishment" is equally unavailing. In arguing that the Board's failure to act violates the *Ex Post Facto* clause, petitioner cites to the Minutes from the September 11, 1996 Board meeting as evidence that the Board intended to punish plaintiff. At the meeting, the Board advised:

> The advice of the Attorney General's office was that there is no basis to tell the attorney [for plaintiff] anything other than her client has an Order on file [and] the effect is the doctor's problem . . . .

According to petitioner, the statement that the effect of the order is the "doctor's problem" "leaves no doubt but that the Board intended to punish plaintiff." Petitioner's claim that the Board's

refusal to act is "punishment" is based upon arguments that inaction constitutes an *Ex Post Facto* action, the sole explanations for which is "punitive intent."

██ The Board's failure to expunge or modify the consent order in 1996 was based upon the Board's understanding that it had no ability to expunge, not with the intent to punish petitioner. Therefore, the Board's inaction does not violate the *Ex Post Facto* clauses of either the federal or State Constitutions.

### B. *Double Jeopardy*

 Petitioner next argues that the Board's refusal to act constitutes punishment violative of his constitutional rights to be free from double jeopardy. *U.S. Const.* amend. V; *N.J. Const.* art. I, ¶ 11. The double jeopardy clause protects against multiple punishments for the same offense. *North Carolina v. Pearce,* 395 *U.S.* 711, 717, 89 *S.Ct.* 2072, 2076, 23 *L. Ed.*2d 656, 665 (1969). The constitutional prohibition against double jeopardy consists of the following three guarantees: (1) a second prosecution for the same offense after acquittal; (2) multiple punishment for the same offense; and (3) a second prosecution for the same offense after conviction. *Ibid.*

Petitioner argues that the Board's original 1986 review (according to petitioner this was the "first prosecution") resulted in *no* "punishment" in the form of reprimand or license suspension or revocation. The Board's 1996 refusal to act (according to petitioner this was the "second prosecution") imposed punishment in the form of monetary and reputational harm. Petitioner contends that the resulting impact violates the double jeopardy clause.

██ Petitioner's argument is flawed. The Board did nothing punitive in 1996. The decision not to grant petitioner's request to modify or expunge the order was based on the Board's understanding that it lacked expungement power. The Board's 1986 consented to action and 1996 inaction did not result in a violation of the double jeopardy clause of either the federal or State Constitutions.

## C. Bill of Attainder

Petitioner argues that the Board's refusal to rectify the impact of the consent order constitutes a Bill of Attainder, prohibited by both the federal and State Constitutions. *U.S. Const.* art. I, § 10, cl. 1; *N.J. Const.* Art. IV, § 7, ¶ 3. A Bill of Attainder is a "legislative act which levies punishment against specified individuals or groups without a judicial trial." *In re Coruzzi,* 95 *N.J.* 557, 579, 472 *A.*2d 546, *cert. denied, sub nom, Coruzzi v. New Jersey,* 469 *U.S.* 802, 105 *S.Ct.* 56, 83 *L.Ed.*2d 8 (1984). Again, the Board's 1996 refusal to expunge or modify the order did not constitute punishment. Therefore, the Board's inaction did not constitute an illegal Bill of Attainder.

## D. Substantive Due Process

Petitioner next contends that he was deprived of substantive due process because the Board's refusal to act unreasonably interfered with his right to earn a living. At all relevant times, petitioner has had a license to practice medicine issued by and maintained in accordance with New Jersey law. While not recognized as a fundamental right (requiring a compelling state interest to withstand constitutional scrutiny), a license to practice medicine, which has not been revoked or suspended, is a protected property right entitled to reasonable regulation in the public interest. *See, e.g., Limongelli v. New Jersey State Bd. of Dentistry,* 137 *N.J.* 317, 326, 645 *A.*2d 677 (1993) (concluding that fundamental fairness, not constitutional due process, required the Board to provide dentist with adequate notice of the charges against him and an opportunity to respond to those charges before imposing substantial sanctions in denying relicensure); *In re Polk,* 90 *N.J.* 550, 560, 562, 449 *A.*2d 7 (1982) (acknowledging that the right to earn a living is not a fundamental right).

Here, petitioner has allegedly been denied panel membership to various managed care organization because of the 1986 order. As a result, plaintiff claims to suffer both monetary and reputational harm. Such denial, plaintiff asserts, interferes with

his right to earn a living. As the Court has made clear beginning with *Falcone*, and more recently in *In re Limongelli*, the right to earn a living is a protected property interest subject to a consideration of the public interest and the reasonableness of the action. However, the Board's initial decision to enter the 1986 order was neither arbitrary nor unreasonable. Moreover, entrance of such disciplinary orders is within the interest of the public in assuring their health and welfare through the regulation and supervision of the licensed medical profession. Thus, the Board's conduct, alone, did not deprive petitioner of substantive due process.

### E. *Procedural Due Process*

Petitioner contends that the Board's failure to provide him with an opportunity to be heard in 1996 when he first complained of the order's impact on his livelihood denied him procedural due process.

Under the Administrative Procedure Act (APA), notice and a hearing before an administrative law judge are required only when a hearing is required under (1) the United States Constitution; (2) the New Jersey Constitution; or (3) another New Jersey statute. The APA itself does not create a substantive right to an administrative hearing. Instead, it provides for a procedure to be followed "in the event an administrative hearing is otherwise required by statutory law or constitutional mandate." *In re Limongelli, supra,* 137 *N.J.* at 325, 645 *A.*2d 677 (citations omitted). Here, no statute requires that a medical professional requesting modification of a previously negotiated and entered consent order receive a hearing.

Whether "constitutional mandate" requires a hearing depends upon the nature of the interest involved and the expectations of the party seeking relief. *Ibid.* While the right to earn a living is deemed a protected property right, constitutional due process protects against only the improper suspension or revocation of a license. *Id.* at 326, 645 *A.*2d 677. Here, plaintiff argues that, although his license to practice medicine has not been

literally revoked, the net effect of the consent order has had the same impact. He thus argues that he was entitled to some form of procedural due process. Because the Board did not revoke or suspend plaintiff's license, petitioner has no right to a hearing under the APA.

The Supreme Court, in its procedural due process inquiry, has, notwithstanding the absence of a constitutional or statutory right to a hearing under the APA, concluded that under some circumstances basic procedural fairness necessitates a hearing and/or notice. *Id.* at 328, 645 *A.*2d 677. *In re Limongelli* involved a dentist who signed a consent order revoking his license to practice dentistry. The order provided that he would be prohibited from applying for reinstatement for five years. Subsequently, when the Board determined that he had been practicing without a license, the Board conducted an investigation which included a hearing. Limongelli was not present at the hearing nor was he notified that an investigation had ensued. Several years later, when Limongelli applied for reinstatement, the Board denied his application for relicensure based upon the prior investigation and prohibited him from reapplying for an additional ten years. Limongelli brought an action against the Board arguing that he was denied due process because the Board had not given him notice of the charges against him and an opportunity to respond to those charges. *Id.* at 321, 645 *A.*2d 677.

The Court concluded that Limongelli was not entitled to a hearing under the APA. *Id.* at 328, 645 *A.*2d 677. The Court, remanding the case to the Board, however, held that procedural fairness required that Limongelli had the right to know that the Board was contemplating extending the period during which he would be prohibited from applying for relicensure. *Id.* at 328–29, 645 *A.*2d 677.

 Here, when the consent order was entered in 1986, petitioner agreed to its terms and was represented by counsel. The subsequent advent of managed care occurred without action by the Board. Thus, the Board did not engage in any activity which

in procedural fairness would entitle petitioner to either notice or an opportunity to be heard.

## F. *Equal Protection of the Laws*

Lastly, petitioner argues that the Board, in violation of the equal protection clause of both the federal and State Constitutions, treated him differently from other licensees facing discipline who have had the opportunity to be heard and present evidence.

The Equal Protection clause of the Fourteenth Amendment of the United States Constitution requires that all persons similarly situated be treated alike. *U.S. Const.* amend. XIV, § 1. Article I, paragraph 1 of the New Jersey Constitution has been interpreted "as conferring the right of equal treatment under the law, a right analogous to the guarantee of equal protection under the Fourteenth Amendment." *Poritz,* supra, 142 *N.J.* at 94, 662 *A.*2d 367 (citing *N.J. Const.* art. I, ¶ 1).

As noted, a license to practice medicine is not a fundamental right. Absent infringement of a fundamental right or discrimination against a suspect class, equal protection is not denied if the classification is rationally related to a legitimate governmental interest. *In re Polk, supra,* 90 *N.J.* at 571, 449 *A.*2d 7. There is no equal protection violation if the challenged action represents a "rational means to serve a legitimate end." *Poritz, supra,* 142 *N.J.* at 92, 662 *A.*2d 367.

Because plaintiff's equal protection argument is couched in terms of a procedural due process claim, which for the reasons already discussed is without merit, plaintiff's equal protection claim is similarly rejected.

The final decision of the Board is affirmed.