**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1345-13T4

IN THE MATTER OF THE
EXPUNGEMENT APPLICATION
OF P.H. PURSUANT TO
N.J.S.A. 2C:52-1 to -32.

APPROVED FOR PUBLICATION

July 17, 2014

APPELLATE DIVISION

Argued June 4, 2014 – Decided July 17, 2014

Before Judges Lihotz, Maven and Hoffman.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Municipal Appeal No. 12-5375.

Mary R. Juliano, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for appellant State of New Jersey (Christopher J. Gramiccioni, Acting Monmouth County Prosecutor, attorney; Ms. Juliano, of counsel and on the brief).

Edward C. Bertucio argued the cause for respondent P.H. (Hobbie, Corrigan & Bertucio, P.C., attorneys; Mr. Bertucio, of counsel; Justin Lee Klein, on the brief).

The opinion of the court was delivered by

LIHOTZ, J.A.D.

In this appeal we consider the impact of the expungement statute upon charged indictable and disorderly persons offenses ultimately resolved through imposition of a civil penalty, which is ineligible for expungement.  The State appeals from an October 31, 2013 order granting P.H.'s petition for expungement

of all records relating to a criminal complaint charging P.H. with animal cruelty in the death of a dog. The order required expungement of the original complaint, records of P.H.'s arrest and detention, and the indictment and decision to downgrade the charges, which were ultimately dismissed. The order did not expunge the final disposition resulting from P.H.'s admission to a civil violation. The State argues:

> POINT I
>
> THE PETITION FOR EXPUNGEMENT SHOULD HAVE BEEN DENIED BECAUSE PETITIONER'S ANIMAL CRUELTY PROCEEDINGS RESULTED IN AN UNEXPUNGEABLE CIVIL DISPOSITION.
>
> POINT II
>
> ALTERNATIVELY, EXPUNGEMENT WAS BARRED PURSUANT TO N.J.S.A. 2C:52-14c.

We affirm.

The facts essentially are not disputed. In 2012, P.H.'s dog died of asphyxiation after being hanged from a door by its leash. P.H. was arrested and charged with fourth-degree animal cruelty, N.J.S.A. 4:22-17(b)(2) (amended 2013), and the disorderly persons offense of animal cruelty, N.J.S.A. 4:22-17(b)(1) (amended 2013).[1] Bail was set at $1,500, no ten percent, which P.H. paid and was released.

---

[1] P.H. was charged under a statute prohibiting animal cruelty, which was thereafter amended on August 7, 2013 by

(continued)

A county grand jury reviewed the case and found insufficient evidence to return an indictment. The State downgraded the fourth-degree offense to two disorderly persons (DP) offenses under N.J.S.A. 4:22-17(a)(1) (amended 2103) and N.J.S.A. 4:22-17(a)(3) (amended 2013), and returned the two DP charges to the municipal court for disposition.[2] After

_____

(continued)
"Patrick's Law," L. 2013, c. 88, § 2. The provisions under which P.H. was initially charged read in pertinent part:

> b. A person who shall purposely, knowingly, or recklessly:
>
> (1) Torment, torture, maim, hang, poison, unnecessarily or cruelly beat, or needlessly mutilate a living animal or creature; or
>
> (2) Cause or procure, by any direct or indirect means, including but not limited to through the use of another living animal or creature, any such acts to be done—
>
> Shall be guilty of a crime of the fourth degree.
>
> [N.J.S.A. 4:22-17(b) (amended 2013).]

Following the 2013 amendment, conduct formerly criminalized by this subsection remains punishable as a crime of the fourth degree pursuant to N.J.S.A. 4:22-17(c) and (d), which broadens the prohibited conduct to include "[c]aus[ing] bodily injury to a living animal or creature by failing to provide the living animal or creature with necessary care[.]"

[2] The prior version of the statute punished as a disorderly persons offense the "[o]verdriv[ing], overload[ing], driv[ing] when overloaded, overwork[ing] . . . or needless[] kill[ing of] a living animal or creature[,]" N.J.S.A. 4:22-17(a)(1) (amended
(continued)

negotiations between P.H. and a New Jersey Society for the Prevention of Cruelty to Animals (NJSPCA) representative, who was present in municipal court, P.H. admitted to a violation of a different statute, N.J.S.A. 4:22-26(a)(1) (amended 2013), which requires payment of a $1,000 civil penalty.[3] The municipal prosecutor approved the agreement and presented it to the municipal court judge, who accepted the resolution. The municipal court judge imposed the fine and added a condition

---

(continued)
2013), as well as the "[i]nflict[ion] [of] unnecessary cruelty upon a living animal or creature, by any direct or indirect means," N.J.S.A. 4:22-17(a)(3) (amended 2013). Subsequent to the amendment, N.J.S.A. 4:22-17(b)(1) now classifies the aforementioned conduct as a disorderly persons offense. Further, portions pertaining to the neglect of animals have been revised and re-classified as a fourth degree offense pursuant to N.J.S.A. 4:22-17(c)(2).

[3]    At the time, N.J.S.A. 4:22-26(a)(1) prohibited:

> a. (1)    Overdriv[ing], overload[ing], driv[ing] when overloaded, overwork[ing], depriv[ing] of necessary sustenance, abus[ing], or needlessly kill[ing] a living animal or creature, or caus[ing] or procur[ing], by any direct or indirect means, including but not limited to through the use of another living animal or creature, any such acts to be done[.]

The 2013 amendment merely deleted the term "deprive of necessary sustenance[.]" N.J.S.A. 4:22-26(a)(1).

prohibiting P.H. from owning a dog for five years. The DP offenses were dismissed.[4]

Thereafter, P.H. filed a petition for expungement of all criminal records, specifically seeking to expunge "evidence of the . . . complaint; of any evidence of arrest for same; and of any evidence of detention for same." The State opposed the motion.

The matter was argued before the Law Division. After giving careful consideration to the respective positions, the judge granted the petition, noting the facts presented were unique and the provisions of N.J.S.A. 2C:52-6 and N.J.S.A. 2C:52-14(c) did not neatly apply. The judge determined the records relating to the civil penalty were "not going away" and the NJSPCA retained a separate record of the events. Specifically, the judge noted:

> And I think[] in fairness . . . both areas are protected. As [I have] read cases with regard to expungement, it seems as if [it is] getting a little bit more liberal to allow people to carry on with their careers, as [P.H.'s counsel] argues. But I think that, clearly, the interest of the State is also protected in that this is just not going away. It will be there. Animal control is aware of it, and that any

---

[4] In his certification regarding the disposition of the municipal matter, Municipal Prosecutor James N. Butler characterized the disposition as "a plea agreement."

> references that talk about the civil aspect
> would not be redacted and sealed.

The judge made clear the records of P.H.'s admission to an offense resulting in the imposition of a civil penalty would not be expunged. Rather, the judge confined the terms of the order to expunging those criminal records associated with charges that were dismissed and to which P.H. was not convicted. An October 31, 2013 order was entered, from which the State filed this appeal seeking reversal.[5]

The State maintains expungement was erroneously granted because P.H. cannot meet the statutory standard providing relief only

> [i]n all cases, except as herein provided, wherein a person has been arrested or held to answer for a crime, disorderly persons offense, petty disorderly persons offense or municipal ordinance violation under the laws of this State or of any governmental entity thereof and against whom proceedings were dismissed, or who was acquitted, or who was discharged without a conviction or finding of guilt, may at any time following the

---

[5] Prior to the matter being listed for oral argument, the State moved to strike portions of P.H.'s brief, including arguments and documents not presented to the Law Division. The reviewing panel denied the motion to strike, directing "[t]he merits panel can determine whether the disputed statements in [P.H.'s] brief are supported by the record on appeal." It appears P.H. removed any contested material from P.H.'s appendix, mooting that aspect of the motion. Whether P.H. has advanced arguments based on these materials is not addressed in the merits briefs, suggesting it too is moot.

> disposition of proceedings, present a duly verified petition as provided in N.J.S.A. 2C:52-7 to the Superior Court in the county in which the disposition occurred praying that records of such arrest and all records and information pertaining thereto be expunged.
>
> [N.J.S.A. 2C:52-6(a).]

Specifically, the State argues P.H. was not acquitted or discharged without a finding of guilt and the charges were not dismissed. Rather, P.H. was "charged with indictable crimes . . . which, ultimately after downgrade, remand, and then plea negotiations, were disposed of by way of imposition of a civil penalty," a disposition "ineligible for expungement."

The State rejects what it characterizes as P.H.'s "created" criminal-civil dichotomy, asserting the facts supporting the civil violation remain the same as those underpinning the initial criminal charges and it is the ultimate outcome — i.e., admission to a civil penalty — that determines the eligibility for expungement of records. The State asserts "[s]imply, it is one file . . . and there is only one record," therefore, "the disposition of [P.H.'s] arrest was not a 'dismissal[,]' but a guilty finding of an amended charge that carried a civil penalty." The State concludes "[n]othing in the expungement statute suggests an intent to parse the proceedings that flow from a criminal complaint in such a manner in order to grant

partial expungement of criminal files." Accordingly, the ultimate disposition requires all records "concerning" P.H.'s "ineligible civil disposition" including those regarding the initial criminal charges remain unaltered. N.J.S.A. 2C:52-1.

P.H. counters, arguing, as remedial legislation, the terms of the statute must be construed broadly in favor of granting relief. Therefore, P.H. maintains the downgraded disorderly persons charges were "dismissed" as the term is used in N.J.S.A. 2C:52-6(a). P.H. finds support for this assertion in the municipal prosecutor's affidavit, included with the State's opposition before the Law Division. The prosecutor avers the disorderly persons charges were "dismissed."

In reviewing the question posed, "our role is to effectuate the legislative intent of the expungement statute[,]" N.J.S.A. 2C:52-1 to -32. In re Expungement Petition of D.H., 204 N.J. 7, 17 (2010) (internal quotation marks and citation omitted). We do not defer to the legal conclusions reached by the trial court; our review of the statute is de novo. State v. K.W., 214 N.J. 499, 507 (2013) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995) (noting that "interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference")).

"The expungement of criminal records is available only if authorized by legislation. There is no constitutional or common law right to the expungement of records relating to a criminal conviction." In re Expungement Application of G.P.B., __ N.J. Super. __, __ (App. Div. 2014) (slip op. at 3). In this regard, a petitioner bears the burden to satisfy the statutory requirements entitling him or her to an order of expungement. In re G.R., 395 N.J. Super. 428, 431 (App. Div.), certif. denied, 193 N.J. 275 (2007). "Where the petitioner meets the burden, the [S]tate has the burden of demonstrating by a preponderance of the evidence that there is a statutory bar or that the petition should not be granted." Ibid. Accordingly, the Legislature provides for the expungement of arrest and criminal records, under certain conditions and subject to enumerated exceptions. In re Expungement Application of P.A.F., 176 N.J. 218, 220 (2003).

When expungement is ordered the statute requires "the extraction and isolation of all records on file with any court, detection or correctional facility, law enforcement or criminal justice agency concerning a person's detection, apprehension, arrest, detention, trial or disposition of an offense within the criminal justice system." N.J.S.A. 2C:52-1(a). Nevertheless, the statute does not order "the destruction[] of expunged

records,"[6] D.H., supra, 204 N.J. at 17, and "the records remain available to the judiciary and law enforcement for certain purposes, N.J.S.A. 2C:52-17 to -23, -27c."  P.A.F., supra, 176 N.J. at 221.

Our review of the statute's provisions "discloses an expressed design to deal only with criminal charges and their consequences."  In the Matter of the Expungement of the Criminal Record of M.D.Z., 286 N.J. Super. 82, 85 (App. Div. 1995).  "In setting forth the requirements for expungement relief, the statute differentiates between indictable offenses [N.J.S.A. 2C:52-2] and disorderly persons offenses [N.J.S.A. 2C:52-3]," D.H., supra, 204 N.J. at 17, as well as violations of municipal ordinances, N.J.S.A. 2C:52-4.[7]  Records of civil violations are ineligible for expungement.  N.J.S.A. 2C:52-6(a) (providing expungement relief is available only as set forth in the statute).

As noted, the State's strict construction argument insists the criminal charges were not dismissed but modified subject to

_____

[6]   "Expunged records . . . include complaints, warrants, arrests, commitments, processing records, fingerprints, photographs, index cards, 'rap sheets' and judicial docket records."  N.J.S.A. 2C:52-1(b).

[7]   The statute also addresses expungement of juvenile adjudications, N.J.S.A. 2C:52-4.1, and young drug offenders, N.J.S.A. 2C:52-5.

the terms of a plea agreement; and, since the ultimate disposition was civil, expungement relief is not available to P.H. We are not persuaded.

As the Law Division judge observed, the statutory provisions do not squarely address the circumstances presented and it appears unlikely the Legislature contemplated the unique situation when an indictable charge ultimately is resolved by imposition of a civil monetary penalty. Faced with this anomaly, we note a court "'may also turn to extrinsic guides if a literal reading of the statute would yield an absurd result, particularly one at odds with the overall statutory scheme.'" In re Princeton Office Park, __ N.J. __, __ (2014) (slip op. at 17) (quoting Wilson v. City of Jersey City, 209 N.J. 558, 572 (2012)).

"The chief aim when interpreting a law is to determine and give effect to the Legislature's intent." In re D.J.B., 216 N.J. 433, 440 (2014) (citation omitted). We discerned the legislative intent "from the enactment 'when read in the full light of its history, purpose and context.'" State v. Lewis, 185 N.J. 363, 369 (2005) (quoting State v. Gill, 47 N.J. 441, 444 (1966)). Also, we are guided by the Code's inclusion of this instruction:

> The provisions of the code shall be construed according to the fair import of

A-1345-13T4

their terms but when the language is susceptible of differing constructions it shall be interpreted to further the general purposes stated in this section and the special purposes of the particular provision involved. The discretionary powers conferred by the code shall be exercised in accordance with the criteria stated in the code and, insofar as such criteria are not decisive, to further the general purposes stated in this section.

[N.J.S.A. 2C:1-2(c).]

See also State v. Hudson, 209 N.J. 513, 541 (2012) (Patterson, J., dissenting).

Importantly, the expungement statute "expresses a clear, 'primary objective of providing relief to the one-time offender who has led a life of rectitude and disassociated himself [or herself] with unlawful activity.'" D.H., supra, 204 N.J. at 17 (quoting N.J.S.A. 2C:52-32). See also In re Kollman, 210 N.J. 557, 568 (2012) ("[T]he statute is designed to eliminate the collateral consequences imposed upon otherwise law abiding citizens who have had a minor brush with the criminal justice system."). Noting "[t]he statute begins with the language: 'In all cases, except as herein provided . . . .[,]'" P.A.F., supra, 176 N.J. at 223 (quoting N.J.S.A. 2C:52-2(a)), the Court has instructed "it is not the general rule, but rather the exceptions that are to be construed narrowly." Ibid. (citations omitted).

The State's position expressed in this case leads to an illogical and unfair result, which we find is at odds with this clearly expressed legislative intent of the expungement statute. Following the statute's reasoning, had P.H. capitulated and pled to a DP, or even a petty DP offense, the criminal records would be subject to expungement. N.J.S.A. 2C:52-3. However, because P.H. rejected the State's allegation the incident demonstrated criminal conduct and insisted the dog accidentally died during training, P.H. must forever be saddled with disclosing records of criminal indictment, arrest, detention, bail and downgrade even though no criminal disposition occurred. We conclude the more reasonable common-sense interpretation favors expungement in this instance and conclude the facts presented fit within N.J.S.A. 2C:52-6(a) because P.H.'s criminal charges were "discharged without a conviction or finding of guilt" and "dismissed." See State ex rel. K.O., 217 N.J. 83, 94 (2014) ("Statutory language is entitled to its ordinary meaning and to be given a common-sense construction."). See also State v. Galicia, 210 N.J. 364, 400 (2012) (Albin, J., dissenting) (favoring common sense interpretation of the Code's statutory provisions).

Importantly, P.H. was not "found guilty," nor was a guilty plea entered. Rather, the record contains P.H.'s admission he

violated a civil statute. This distinction is extremely important as it obviates the State's concern that granting expungement in this circumstance may subject each and every criminal plea agreement to partial expungement of records evincing initial criminal charges, indictment, arrest and the like.

The State's reliance on the pre-Code opinion of Sawran v. Lennon, 19 N.J. 606 (1955), to suggest civil suits for penalties may be equated with criminal or quasi-criminal ordinance violations ignores the specific pronouncement of the Court in that matter, which held: "Suits for penalties, however, though originating in the same way by statutes, or in ordinances adopted pursuant to appropriate statutes, are neither criminal nor quasi-criminal in nature but civil. Such offenses are punishable, as the name implies, by penalties[.]" Id. at 612 (internal citations omitted).

We also find unavailing the State's assertion that expungement of the initial criminal charges is prohibited as the same conduct supported both the criminal and civil violations of the respective statutes. Without examining the details of the facts against the requisites of the respective statutes, we note Chapter 22, which is designed to prevent cruelty to animals, N.J.S.A. 4:22-11.1 to -60, includes two distinct statutory

schemes, differentiating criminal prosecutions from civil actions. Also apparent is the different burdens of proof in the respective proceedings. <u>Dep't of Conservation v. Scipio</u>, 88 <u>N.J. Super.</u> 315, 322 (App. Div.) ("[C]ivil proceedings to recover a statutory penalty do not require proof beyond a reasonable doubt that the accused transgressed the law."), <u>certif. denied</u>, 45 <u>N.J.</u> 598 (1965).

Further, we find unpersuasive the suggestion this matter falls within the exception delineated by the statute because P.H.'s admission evinced "a plea agreement" and P.H.'s admission to the civil offense precludes further prosecution for the same facts. This was a negotiated result, but it is not a plea agreement.

The "Guidelines for Operation of Plea Agreements in the Municipal Courts of New Jersey," included in the Appendix to Part VII of the Rules, specifically provides plea agreements relate to offenses, which by definition excludes civil matters. Guidelines for Operation of Plea Agreements in the Municipal Courts of New Jersey, Pressler & Verniero, <u>Current N.J. Court Rules</u>, Guideline 1 at 2501 (2014). ("The purpose of these Guidelines is to allow for flexibility in the definitions and exclusions relating to the plea agreement process as that

process evolves and certain offenses come to demand lesser or greater scrutiny.").

Additionally, the State's reliance on State v. Womack, 145 N.J. 576 (1996), to suggest double jeopardy attaches to civil penalties is inapposite. In Womack, the defendant faced criminal charges following civil adjudication of his conduct of practicing medicine without a license. Id. at 581. The Court concluded double jeopardy may attach precluding prosecution if the civil penalty is punitive rather than remedial. Id. at 584-85. The facts in this matter are unlike Womack. Therefore, its authority is not controlling.

First, the animal cruelty statute belies the State's general argument that double jeopardy attaches to civil admissions. N.J.S.A. 4:22-28 provides "[t]he indictment of a person under the provisions of this article . . . shall not in any way relieve that person from liability to be sued for the appropriate penalties under [N.J.S.A.] 4:22-6." Second, in this matter double jeopardy is implicated not because of the penalty imposed, but because P.H. faced criminal charges, which the grand jury concluded could not be sustained. After a downgrade to lesser quasi-criminal offenses, the State decided to abandon prosecution and dismiss the criminal charges in favor of allowing a civil fee remitted to the NJSPCA.

A-1345-13T4

Following our detailed review of the numerous arguments advanced, we find unfounded the State's fears that extending relief to the criminal records in this matter will result in a flood of expungement requests. Based on the unusual facts presented, we conclude P.H. was held to answer for an offense with no resultant criminal or quasi-criminal conviction consequences, as all criminal charges were dismissed. The petition supported expungement, meeting the requisites of N.J.S.A. 2C:52-6(a). The State's opposition was properly rejected. Accordingly, expungement of the criminal records was correctly ordered and that order appropriately excluded municipal court and NJSPCA records regarding P.H.'s admission of responsibility under N.J.S.A. 4:22-26(a). See M.D.Z., supra, 286 N.J. Super. at 86 ("It is clear, from both the specific provisions of the expungement statute and its general tenor, that the Legislature intended it to encompass only criminal charges and their consequences.").

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION